653 So.2d 119 (1995)
SUCCESSION OF Adell FLETCHER.
Maxine FLETCHER, Administratrix-Appellee,
v.
Wayne FLETCHER, Opponent-Appellant.
No. 94-1426.
Court of Appeal of Louisiana, Third Circuit.
April 5, 1995.
Writ Denied June 16, 1995.
*120 Richard E. Lee, Pineville, for Maxine Fletcher.
William E. Skye, Alexandria, for Wayne Fletcher.
Before THIBODEAUX, DECUIR and AMY, JJ.
AMY, Judge.
This is an appeal from a judgment finding that a testator had the capacity to execute a statutory will and upholding the validity of the testament.

FACTS
Testator, Adell Fletcher, suffered a stroke on May 17, 1981, rendering him paralyzed on the right side of his body, bedridden, confined to a wheel chair, and limited in his ability to speak.
In 1989, testator's attorney, Henry Lemoine, Jr., prepared a statutory will for him. Mr. Lemoine testified that testator did not want his only child, Wayne Fletcher, to inherit anything. In light of testator's limitations as a result of his stroke and his declining health, Mr. Lemoine decided to draft the will in accordance with LSA-R.S. 9:2442(C),[1] which prescribes the statutory will formalities for a testator who is physically capable of reading, knows how to read, and knows how to sign his name but is *121 unable to sign his name due to a physical infirmity. The will disinherited Wayne Fletcher under LSA-C.C. art. 1621(12) for failure to communicate with his father for more than two years and left testator's entire estate to his own siblings. Mr. Lemoine forwarded a draft of the will to testator for him to review, and on October 5, 1989, he visited testator in his room at the Veteran's Administration Hospital to execute the will.
Testator died on October 25, 1991. Since the will failed to name an executor, Maxine Blake Fletcher, decedent's sister-in-law, was confirmed as the succession representative of decedent's succession. On March 13, 1992, Wayne Fletcher (hereafter "Opponent") filed a petition in opposition to the probate of testator's will. On November 5, 1992, Maxine Fletcher filed a petition to probate the will. Evidence was introduced about the authenticity and compliance of the will with the statutory formalities at a hearing held on November 16, 1992. The trial court ordered the will probated upon finding that the proponents of the will met the burden of proving that the will was authentic and that it was executed in compliance with LSA-R.S. 9:2442(C). Opponent appealed.
Opponent contests the validity of the will on three bases: First, opponent maintains that his father lost the physical ability to read as a result of his stroke and, as a consequence, could not execute a will under LSA-R.S. 9:2442(C) which requires that a testator have the ability to read. Second, opponent argues LSA-R.S. 9:2442(C)(1) requires that the body of the will contain a written provision stating that the testator is unable to sign due to a physical impairment and that his father's will is invalid because it has no such provision. Third, opponent alleges that, since his father affixed his signature to the will rather than his mark, the document is not in compliance with LSA-R.S. 9:2442(C).[2]

ABILITY TO READ
Opponent maintains that the trial court erred in finding that testator had the ability to read at the time the will was executed as required by LSA-R.S. 9:2442. In support of this allegation, opponent states that LSA-C.C.P. art. 2903 places the burden of proving a testator's ability to read on the will's proponent.
LSA-C.C.P. art. 2903 requires a proponent to prove a testament's authenticity and compliance with statutory formalities. A testator's ability to read is an element of testamentary capacity, not of authenticity or formality. LSA-R.S. 9:2442; Succession of Budwah, 441 So.2d 39, 41 (La.App. 3d Cir. 1983); Succession of Dorand, 596 So.2d 411, 412 (La.App. 4th Cir.), writ denied, 600 So.2d 661 (La.1992); Succession of Sullivan, 509 So.2d 844, 847 (La.App. 1st Cir.1987). A party is presumed to have testamentary capacity, and the opponent bears the burden of defeating this presumption by putting forth clear and convincing evidence to the contrary. Succession of Lyons, 452 So.2d 1161, 1166 (La.1984). To satisfy the clear and convincing standard, it must be proven that "the existence of the disputed fact [is] highly probable, that is, much more probable than its non-existence." Succession of Bartie, 472 So.2d 578, 582 (La.1985).
Whether a testator can read is a question of fact. Sullivan, 509 So.2d at 847. Absent manifest error, the trial court's finding will not be overturned on appeal. Succession of Daigle, 601 So.2d 10, 13 (La.App. 3d Cir.1992); Sullivan, 509 So.2d at 847.
In the case before us, uncontradicted evidence was introduced that the testator *122 knew how to read and was physically able to do so before his 1981 stroke. The disputed fact is whether he still possessed the physical ability to do so at the time the will was executed.
Mr. Lemoine testified that testator appeared to examine the will and to read along with him at its execution; this testimony was corroborated by both witnesses to the will and of W.L. Newton. However, each testified that he could not be certain that testator was indeed reading. Mr. Newton further stated that testator had read his calendar at the VA Hospital but conceded that he had never seen testator read a book, newspaper, or magazine. Julia Maxine Fletcher testified that testator had pointed out to her some information in a church bulletin and had appeared to read a burial insurance policy she had secured for him. However, she stated that she could not swear that testator could read after the stroke.
Opponent and his wife, Olga Fletcher, each testified that testator lost the ability to read after his stroke, that they had read to testator, and that they had never seen any books, magazines, or newspapers in his room at the VA Hospital. Opponent, however, admitted that his father wore bifocals after his stroke and that he was satisfied that his father had read and signed a compromise agreement into which he and his father had entered concerning his mother's succession in April 1990.
The trial court held that opponent had "failed to meet his burden of proving his father could not read at the time he executed the will at issue." Resolution of conflicts in testimony and credibility determinations in succession proceedings are within the province of the trial court. Daigle, 601 So.2d at 13; Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989). Our review of the record fails to demonstrate that the trial court's determination that the opponent failed to offer sufficient proof that the testator could not read was clearly wrong; therefore, we will not disturb this finding.

COMPLIANCE WITH STATUTORY FORMALITIES
Opponent argues that the trial court erred in finding the will to be properly executed, alleging that it failed to meet two statutory formalities. First, opponent contends that LSA-R.S. 9:2442(C) requires a written provision in the body of the will stating that the testator is unable to sign due to a physical impairment; there is no such provision in the body of this will. Secondly, opponent asserts that LSA-R.S. 9:2442(C) permits the testator to affix only his mark to the testament and that testator affixed his signature to this will. The determination that the will satisfied LSA-R.S. 9:2442(C) is a conclusion of law rather than a factual finding; therefore, we review the trial court's resolution of these issues de novo.
Opponent contends that it is necessary under LSA-R.S. 9:2442(C)(1) that there be a written provision in the body of the will attesting that a physical infirmity renders the testator unable to sign his name.
Since it is the province of the Louisiana Legislature rather than Louisiana courts to mandate the formalities for wills, we decline to interpret LSA-R.S. 9:2442(C)(1) as opponent suggests, for to do so would impose an additional requirement. The statute requires that the testator declare or signify his physical inability and that the attestation clause reflect this declaration. The statute does not require that this information be written again in the body of the will. We perceive no advantage in requiring a will to recite twice a testator's inability. We therefore conclude that the requirements of LSA-9:2442(C)(1) were satisfied by the testator's verbal representations about his disability in the presence of the notary and two witnesses and by the inclusion of the attestation clause; accordingly, this assignment of error is without merit.
Opponent next contends that the will is not in compliance with the formalities set forth in LSA-R.S. 9:2442(C) because that statute requires that a testator "shall affix his mark at the end of the will and on each other separate page of the instrument." LSA-R.S. 9:2442(C)(1). Opponent argues that the use of the term "mark" means that a testament is valid only if the testator makes his mark, not his signature.
We find that the proper focus in this matter is whether the testamentary form used is *123 a proper one for this testator under these particular circumstances, not whether a given piece of writing is characterized as a signature or a mark.
In the instant case, testator knew how to read and was found by the trial court to be physically capable of doing so. Evidence given at trial clearly established that testator was laboring under a physical infirmity as contemplated in LSA-R.S. 9:2442(C). Opponent testified, although testator was right-handed before his stroke, afterwards he was unable to use his right arm. Mr. VanDyke testified that testator experienced considerable difficulties in executing the will, taking quite a bit of time. Finally, the distressed nature of the marks on the will themselves evidence the physical problems testator underwent in writing.
Under the facts presented in this case, the writings made by testator on the will satisfy the requirements of LSA-R.S. 9:2442(C). The evidence indicates that the proper testamentary form was used in this circumstance; as such, we find that this assignment of error is without merit.

DECREE
Accordingly, we find no error in the trial court's judgment and affirm the validity of the will and order it probated. All costs of this appeal are assessed to Wayne Fletcher.
AFFIRMED.
NOTES
[1] LSA-R.S. 9:2442 provides:

A. A statutory will may be executed under this Section only by a person who knows how to sign his name and knows how to and is physically able to read.
B. The statutory will shall be prepared in writing and shall be dated and executed in the following manner:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will and shall sign his name at the end of the will and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: "The testator has signed this will at the end and on each other separate page, and has declared or signified in our presence that it is his last will and testament, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of ______, 19__."
C. If the testator is unable to sign his name because of a physical infirmity, the will shall be prepared in writing and shall be dated and executed in the following manner:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will, that he is unable to sign because of a physical infirmity, and shall then affix his mark at the end of the will and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: "The testator has declared that he knows how to sign his name but is unable to sign his name because of a physical infirmity and he has affixed his mark at the end and on each other separate page of this will and declared or signified in our presence that this is his last will and testament and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of______, 19__."
[2] The trial court found it unnecessary to consider opponent's contention that LSA-C.C. art. 1621(12), which allows a testator to disinherit a forced heir for failure to communicate with the testator for over two years, is unconstitutionally vague because testator was not a forced heir by virtue of LSA-R.S. 9:2501 and LSA-C.C. art. 1493. Since the trial court's ruling, the Louisiana Supreme Court has declared LSA-R.S. 9:2501 and LSA-C.C. art. 1493 unconstitutional.19_." Succession of Lauga, 624 So.2d 1156 (La.1993); Succession of Terry, 624 So.2d 1201 (La.1993). In light of the Louisiana Supreme Court's decisions, opponent and the succession representative entered into a stipulation that grounds for testator to have disinherited opponent did not exist and that opponent is entitled to his forced portion. Additionally, this argument was not briefed on appeal, so it is abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4.