# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**05-860**

**SUCCESSION OF MATTHEW L. SANDIFER**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 14,969
HONORABLE ALLEN A. KRAKE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

Ralph W. Kennedy
1215 Texas Avenue
Alexandria, LA 71301
(318) 445-5356
COUNSEL FOR APPELLANT:
    Anthony Dewayne Bell

Lottie L. Bash
Gold, Weems, Bruser, Sues & Rundell
Post Office Box 6118
Alexandria, LA 71307-6118
(318) 445-6471
COUNSEL FOR APPELLANT:
    Anthony Dewayne Bell

William A. Pesnell
The Pesnell Law Firm
Post Office Box 1794
Shreveport, LA 71166-1794
(318) 226-5577
COUNSEL FOR APPELLEE:
    Leslie Leon Sandifer

**Anthony D. Bell**
**c/o Melvin J. Bell**
**165 Parsonage Road**
**Colfax, LA   71417**

AMY, Judge.

The testator executed a notarial will in which he bequeathed his entire estate to one of his eight children. The remaining siblings attacked the will alleging that their father could not read and that the procedure set forth in La.Civ.Code art. 1579 for testators who are unable to read was not followed. Following a bench trial, the trial court found that the testator was illiterate and declared his will null and void. The dative testamentary executor appeals, arguing that the trial court committed manifest error in finding that the testator could not read at the time he executed his will. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that Matthew Leon Sandifer (hereinafter "testator") died on February 28, 2002. Prior to his death, the testator executed a notarial will dated August 7, 2000, in which his entire estate was left to his daughter, Alice Jean Sandifer Bell. The will also named Mrs. Bell as the executrix of the succession. Mrs. Bell presented the will for probate. According to the record, the defendants, the testator's remaining seven children, opposed the probate of the will, alleging that the testator could not read and that the procedure set forth in La.Civ.Code art. 1579[1] was not

---

[1] Article 1579, entitled **"Notarial testament; testator unable to read,"** provides, in part:

> When a testator does not know how to read, or is physically impaired to the extent that he cannot read, whether or not he is able to sign name, the procedure for execution of a notarial testament is as follows:
>
> (1) The written testament must be read aloud in the presence of the testator, the notary, and two competent witnesses. The witnesses, and the notary if he is not the person who reads the testament aloud, must follow the reading on copies of the testament. After the reading, the testator must declare or signify to them that he heard the reading, and that the instrument is his testament. If he knows how, and is able to do so, the testator must sign his name at the end of the testament and on each other separate page of the instrument.

followed. The defendants requested that the testator's "will be declared invalid and void and that [the testator's] estate pass intestate."

The record shows that Mrs. Bell died before this matter went to trial, and as a result, her son, Anthony Dewayne Bell, was appointed dative testamentary executor. On February 17th and 18th of 2004, a trial was held in which several of the testator's family members and friends testified as to his ability to read and write. Although the witnesses differed on the testator's ability to read, many agreed that the testator was able to sign his name.

The trial court found that the testator was illiterate and that the proper procedure under Article 1579 was not followed with regard to a testator who cannot read. The trial court declared the testator's will null and void. Mr. Bell filed a motion for a new trial, alleging that newly discovered evidence supported his contention that the testator could read. Upon denial of his motion, Mr. Bell appealed.

**Discussion**

In his sole assignment of error, Mr. Bell argues that it was not shown by clear and convincing evidence that the testator was unable to read. He contends that the witnesses' testimony proved that the testator was able to read; therefore, the trial court's finding is manifest error and the judgment should be reversed.

---

(2) In the presence of the testator and each other, the notary and witnesses must sign the following declaration, or one substantially similar: "This testament has been read aloud in our presence and in the presence of the testator, such reading having been followed on copies of the testament by the witnesses [, and the notary if he is not the person who reads it aloud,] and in our presence the testator declared or signified that he heard the reading, and that the instrument is his testament, and that he signed his name at the end of the testament and on each other separate page; and in the presence of the testator and each other, we have subscribed our names this ____ day of ____, ____."

2

"A party is presumed to have testamentary capacity, and the opponent bears the burden of defeating this presumption by putting forth clear and convincing evidence to the contrary." *Succession of Fletcher*, 94-1426, p. 4 (La.App. 3 Cir. 4/5/95), 653 So.2d 119, 121, *writ denied*, 95-1105 (La. 6/16/95), 655 So.2d 338. "Whether a testator has the ability to read is a question of fact, and his ability to read is an element of testamentary capacity." *Succession of Graham*, 01-676, p. 5 (La.App. 5 Cir. 11/27/01), 803 So.2d 195, 197 (footnotes omitted). In the event that the trial court finds that the testator cannot read, the testament will only be valid if it comports with the procedure enunciated in Article 1579. *Id*. The trial court's finding will not be overturned on appeal absent manifest error. *Fletcher*, 653 So.2d 119.

In its reasons for judgment, the trial court explained that:

At trial, evidence was provided which shows that the proper procedure, under La.C.C.Art. 1579, was not followed with regard to a testator who cannot read. Thus the only issue for this Court to resolve is one of fact: whether or not the decedent could read.

After a review of the testimony and evidence presented at trial, the arguments of counsel, as well [as] the evidence introduced into the record after trial[,] its [sic] is the factual finding of this Court that Matthew Leon Sandifer could not read at the time he purportedly executed the will which is the subject of this litigation.

The trial court heard the testimony of several witnesses who opined whether or not the testator could read. Many witnesses were certain that the testator could not read. Ms. Jimmy Alderman, the testator's cousin, testified that the testator only attended school through the third grade and that the testator could not read. When asked how she knew this, Ms. Alderman answered, "[w]ell, I've known it all my life . . . . I spent a lot of time in their home when I was younger and I've been around the family all my life, so naturally I know." She testified that everybody in the family

3

knew he could not read. Ms. Alderman further testified that she never saw the testator read a book, a newspaper, or a Bible.

Richard Mark Newton was the testator's son-in-law and had known him for approximately forty-five years. Mr. Newton recalled one occasion where the testator was asked at church to read a passage and could not. According to Mr. Newton, he held the testator's power of attorney for a period of time and "during that time [the testator] bought the land where his house is situated now, and he bought it in parcels from various heirs." Mr. Newton testified that he "prepared most of those deeds for him and, as such, [he] would read it to him or/and tell him what it, what it said." He further testified that when the testator "paid the people, [he] wrote the check and the only thing [the testator] would do is sign his name."

According to Ms. Thellos Maxwell, the testator's niece, she never saw the testator read anything. She testified that her father "told [her] all, all [her] life, you know, he didn't learn to read because he only got to the third grade." Ms. Lionel Jackson, the testator's daughter, testified that the testator told her that he only had a third grade education and could not read or write. Furthermore, Ms. Jackson and her sister, Mrs. Patricia Whitehead, both testified that they would read things to the testator.

Other members of the testator's family testified that he could read. According to their testimony, the testator appeared to be reading books, magazines, the Bible, blueprints, and insurance policies. The witnesses testified that the testator never read anything out loud. Nevertheless, Mr. Anthony Bell and Mr. Luther Whitehead testified that the testator wore his glasses when he was "reading." They allege that he only wore glasses when he was reading.

Mr. Bell and Mr. Whitehead also testified that they saw the testator write checks. According to Mr. Bell, he saw the testator write a check approximately once every two or three months. He testified that when they would buy building materials, the testator occasionally paid with a check. When asked if he saw the testator write the check or just sign the check, Mr. Bell responded, "[h]e had to write the check, because … unless he wrote it out earlier, which I don't think he would have, but … because you've got to write the amount in, so."

Counsel for Mr. Bell introduced into evidence several checks which were allegedly written by the testator over the years. When he was presented with copies of the check, Mr. Richard Newton testified that he wrote two of the checks. The trial court commented on the handwriting on the checks, explaining that:

> [I]f y'all will take out and follow along with me, look at the first check written to Luther Whitehead. It's got exhibit Bell four across the top of it. I'm not a graphologist, but I can look at Luther D. Whitehead and see how the "I" is formed on that one . . . . If I look back at check number 724 from Hibernia National Bank written to Louisiana Industries, is [sic] that's written by a female, given the formation of the letters and the way she dots her I's. The first one, Luther Whitehead, looks like it's written by a male. But I can see just at a glance several different handwritings on these checks. I don't know which is his, which is not, if any is his, if any is not. The signature stays the same, but the writing and the formation of the check changes from check to check. There are a couple of checks that are written by the same person.

In *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217, p. 11 (La. 4/3/02), 816 So.2d 270, 278, the Louisiana Supreme Court held that "[f]actual determinations of the trier of fact may not be reversed absent manifest error or unless they are clearly wrong." The court went on to explain that:

> [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

5

*Id*. at 279, (quoting *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973)). In the instant case, the trial court was presented with conflicting testimony regarding the testator's ability to read. There was compelling evidence which indicated that the testator could not read. Although several witnesses testified that the testator appeared to be reading various items, the trial court was not required to find that these observations indicated that the testator could, in fact, read. Furthermore, any weighing of the evidence and determinations as to credibility of the witnesses is within the province of the trial court. After reviewing the record, we find that the trial court's determination that the testator could not read was not manifestly erroneous.

Accordingly, this assignment is without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed against the appellant, Anthony Dewayne Bell.

**AFFIRMED**.