STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-63

SUCCESSION OF JERRELL D. WIGGINS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 36,822
HONORABLE F. RAE DONALDSON SWENT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and
James T. Genovese, Judges.

AFFIRMED.

Richard E. Lee
810 Main Street
Pineville, LA 71360
Telephone: (318) 448-1391
COUNSEL FOR:
    Appellant - Samuel F. Wiggins


Walter Brent Pearson
Crowell and Owens, LLC
P. O. Box 330
Alexandria, LA 71309-0330
Telephone: (318) 445-1488
COUNSEL FOR:
    Appellee - Clydie Nugent Wiggins

**THIBODEAUX, Chief Judge.**

Samuel Wiggins, the only surviving son of the deceased, Mr. Jerrell D. Wiggins (Mr. Wiggins), appeals the trial court judgment upholding the validity of Mr. Wiggins's will after a trial on the merits was held to determine whether Mr. Wiggins possessed testamentary capacity at the time he executed his will. Samuel contends that the trial judge committed manifest error in upholding the will because his father was unable to read and write.

We find no manifest error in the trial court's factual determination of testamentary capacity. The judgment is affirmed.

I.

**ISSUE**

We shall consider whether the trial court committed manifest error in finding that Mr. Wiggins could read and write at the time he executed his last will and testament.

II.

**FACTS**

On January 2, 2004, Mr. Wiggins and his second wife, Mrs. Clydie Nugent Wiggins (Mrs. Wiggins), went to the office of Lewis O. Lauve, Jr. to execute wills. In his will, Mr. Wiggins bequeathed to Mrs. Wiggins all of his movable and immovable property with the exception of a 40 acre gravel pit located in Grant Parish, Louisiana.

On August 24, 2006, Mr. Wiggins died. Mrs. Wiggins filed a Petition for Probate of Notarial Testament. Samuel filed an Opposition to Probate of Testament, alleging that at the time the will was executed, his father lacked the testamentary capacity prescribed by law because he was illiterate.

In order to establish Mr. Wiggins's inability to read and write, Samuel presented the testimony of 15 witnesses, each of whom declared that they had neither heard Mr. Wiggins read nor write anything, with the exception of signing his name. In rebuttal, Mrs. Wiggins introduced the testimony of seven witnesses who declared that Mr. Wiggins was able to read and write. After considering all the evidence presented at trial, the trial judge found that Samuel failed to prove, by clear and convincing evidence, that his father was unable to read and write. Accordingly, the trial judge held the will to be valid and ordered probate. Samuel lodged this appeal.

III.

## LAW AND DISCUSSION

### Standard of Review

"The determination of testamentary capacity is a factual question and the findings of the trial judge are not to be disturbed on appeal unless manifestly erroneous." *Succession of Lee*, 430 So.2d 1126, 1128 (La.App. 1 Cir. 1983) (citing *Succession of Wright*, 376 So.2d 589 (La.App. 4 Cir. 1979)). "The ability to read has been properly classified as a matter of testamentary capacity for purposes of determining the validity of a statutory will. There is a strong presumption of validity of testament and the validity of a will is to be upheld whenever possible." *Atkins v. Roberts*, 561 So.2d 837, 840 (La.App. 2 Cir. 1990) (citations omitted). Accordingly, the assessment of whether a testator can read similarly poses a question of fact. *Succession of Young*, 96-1206 (La.App. 3 Cir. 3/5/97), 692 So.2d 1149.

In reviewing a question of fact,

[t]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon

2

review, even though the appellate court may feel that its own evaluations and inferences are reasonable.

*Succession of Sandifer*, p. 5, 05-860 (La.App. 3 Cir. 3/1/06), 923 So.2d 862, 865 (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217, p. 11 (La. 4/3/02), 816 So.2d 270, 278. Therefore, we will review the record in its entirety to determine whether the trial court's factual findings were reasonable in light of the evidence presented at trial.

## A.

### Did the trial court err in finding that Mr. Wiggins was able to read and write?

Under Louisiana law, a party is presumed to have testamentary capacity. *Sandifer*, 923 So.2d 862. To defeat this presumption, the opposing party must prove the lack of testamentary capacity by clear and convincing evidence. *Succession of Lyons*, 452 So.2d 1161 (La.1984). "The traditional measure of persuasion in civil cases is a preponderance of the evidence, but there are a limited number of claims and contentions governed by an intermediate standard, usually termed 'clear and convincing evidence.'" *Id.*

> Generally, this third burden of proof requires more than a "preponderance of the evidence" but less than "beyond a reasonable doubt". The existence of the disputed fact must be highly probable, that is, *much* more probable than its non-existence. This standard is usually employed "where there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy grounds."

*Id.* at 1165 (citations omitted).

> Strong policy considerations are . . . involved when testamentary capacity is disputed . . . [because] "[t]o wrest a man's property from the person to whom he has given it, and to divert it to others from whom he has desired to withhold it, is a most violent injustice, amounting to nothing less than post-mortem robbery, which no court

3

should sanction, unless thoroughly satisfied . . . that the testatory was legally incapable of making a will." 32 La.Ann.1055 at 1062-1063.

*Lyons,* 452 So.2d at 1165 (citation omitted).

The capacity to make a will is tested at the time the will is executed. La.Civ.Code art. 1471. To determine whether capacity existed at the time the will was made, the question to be answered is "whether the testator understood the nature of the testamentary act and appreciated its effects." *Lyons,* 452 So.2d at 1164. Therefore, determining whether the testator was able to read and write at the time the will was executed is of paramount importance.

The majority of this case was based on conflicting testimony regarding Mr. Wiggins's ability to read and write. When a trial court is presented with credibility determinations of adverse testimony in succession proceedings, the "[r]esolution of conflicts in testimony and credibility determinations . . . are within the province of the trial court." *Young*, 692 So.2d at 1151 (citation omitted).

The trial court's factual determinations were reasonable. For example, Samuel presented the testimony of 15 witnesses. However, only one witness, Ralph Phillip Wiggins, Mr. Wiggins's nephew, categorically stated that Mr. Wiggins told him, on one occasion, when they both were trying to read the instructions manual to assemble a lawnmower, that he could not read. Conversely, none of the other witnesses testified to a specific occasion where Mr. Wiggins told them he could not read. Their testimonies pivoted around generalizations. For instance, some of the witnesses testified they had aided Mr. Wiggins in his work by reading plans and specifications to him. Also, they asserted that Mr. Wiggins asked them to read newspaper articles, restaurant menus, and greeting cards to him. Similarly, they declared that during Mr. Wiggins's marriage to his first wife, she read to him and also

4

took care of aspects of his business that involved reading and writing. These testimonies, taken collectively, suggest Mr. Wiggins's level of discomfort towards reading. But they fail to clearly and convincingly prove Mr. Wiggins's inability to read and write. At most, they merely reflect assumptions of Mr. Wiggins's inability to read and write.

Likewise, the introduction of Mr. Wiggins's report card from primary school falls short of proving that he could neither read nor write. Admittedly, Mr. Wiggins's "B/C" average in primary school was far from outstanding. It fails to prove, however, his inability to read and write.

On the other hand, Mrs. Wiggins introduced the testimony of seven witnesses, all of whom declared that Mr. Wiggins was able to read and write. For instance, Mr. Kenneth Kummert, who is married to Mrs. Wiggins's granddaughter, testified he knew Mr. Wiggins for approximately 18 months prior to his death. On one occasion, he went over to the Wiggins's house to help Mr. Wiggins build a fence. Building the fence required the use of a handheld auger, but neither knew how to start it. Mr. Wiggins asked Mr. Kummert to access the operator's manual. According to Mr. Kummert, Mr. Wiggins was paying particular attention to page 7 of the manual. After a few minutes of looking through the manual, he instructed Mr. Kummert to "choke" the auger in order to get it started. It is worth noting that page 7 of the operator's manual is completely typewritten and has neither drawings nor diagrams on it.

Additionally, Mrs. Wiggins's testimony centered upon examples that helped establish Mr. Wiggins's literacy skills. For instance, she stated that when they went on road trips, Mr. Wiggins never requested help reading road signs. She also declared that although Mr. Wiggins never read the newspaper out loud, he discussed

with her articles he read therein.  Likewise, Mrs. Wiggins testified that shortly after they executed their reciprocal wills, they had a discussion about the way in which they were disposing of their property.  Finally, Mrs. Wiggins introduced tangible evidence, such as receipts, "post it" notes, and a phone number list, all of which Mr. Wiggins allegedly wrote.

Thus, in light of the fact that the negative testimony was insufficient to establish Mr. Wiggins's inability to read and write by clear and convincing evidence, the positive testimony of several witnesses, such as Mr. Kummert and Mrs. Wiggins, coupled with the tangible evidence introduced at trial, is given more credence than the negative testimony.  *See Estate of Moreau v. Moreau*, 261 So.2d 293 (La.App. 3 Cir.), *writ denied*, 262 La. 193, 262 So.2d 789 (1972).

Persuasive evidence was presented by both sides in this dispute.  While we may have decided this case differently as trial judges, and are cognizant of our constitutional duty to review facts, we are equally guided by the constraints imposed by the manifest error standard of review to which we owe fidelity.

IV.

**CONCLUSION**

For the foregoing reasons, we find that Samuel failed to establish Mr. Wiggins's inability to read and write by clear and convincing evidence.  The trial court's factual determinations were reasonable in light of the evidence presented at trial and, therefore, are neither clearly wrong nor manifestly erroneous.  Accordingly, we affirm the trial court's judgment.

All costs of this appeal are assessed to Samuel Wiggins.

**AFFIRMED.**

6