# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-447


**SUCCESSION OF**

**CLARENCE WALKER**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 43,555
HONORABLE WILLIAM GREGORY BEARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## D. KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
D. Kent Savoie, Judges.


**REVERSED.**

**Michael Hathorn Davis**
**Law Office of Michael H. Davis**
**Post Office Drawer 12180**
**Alexandria, Louisiana 71315**
**(318) 445-3621**
**COUNSEL FOR OTHER/APPELLANTS:**
     **Gary Mitchell**
     **Sheila Mitchell Johnson**

**Zebulon M. Winstead**
**Andree Braud Leddy**
**Crowell & Owens, LLC**
**3416 North Boulevard**
**Alexandria, Louisiana 71301**
**(318) 445-1488**
**COUNSEL FOR OTHER/APPELLEE:**
     **Joan Robertson**

**SAVOIE, Judge.**

Plaintiffs-in-Rule Gary Mitchell and Sheila Mitchell Johnson appeal the judgment of the trial court, finding they have not met the required burden of proof to nullify the May 26, 2017 testament of decedent Clarence Walker. For the following reasons, we reverse.

## FACTS AND PROCEDURAL HISTORY

Clarence Walker died on June 14, 2017, in Torrance, California. His wife, Virginia Walker, predeceased him, and there were no children born of the marriage. Clarence had children prior to his marriage - a daughter, Joan Robertson, and a son, Paul Davis. Gary Mitchell and Sheila Mitchell Johnson are the children of Virginia Walker's sister. They grew up in the Walker home and were raised primarily by Clarence and Virginia.

Joan Robertson filed a Petition for Order of Effect of Probate and for Confirmation of Independent Executrix on June 29, 2017. The Petition states that Clarence Walker was a resident of Alexandria, Louisiana, when he died. The Last Will and Testament of Clarence Walker dated May 26, 2017, is attached to the petition. Joan Robertson is listed as Independent Executrix in the will, and she executed the oath of office, attaching it to the petition. In the will, Clarence made Joan Robertson his sole heir by stating that after funeral expenses, administrative expenses, and taxes are paid, "I devise and bequeath the remainder of my estate to my daughter, JOAN ROBERTSON." If she predeceases him, his estate would be passed to her "lawful issue," and if she dies without lawful issue, then it would go to his son, Paul Davis. The May 26, 2017 will was executed three weeks prior to Clarence Walker's death while he was hospitalized in California.

Also attached to the petition are two Affidavits of Death, Domicile and Heirship. One was executed by Robert Robertson, Joan's husband, and the other by Betty Washington Walker, a family friend. They both attest that they were well acquainted with Clarence Walker, affirm certain facts listed in the petition, and add that Joan and Paul are over the age of twenty-three years, suffer from no mental incapacity nor physical infirmity and are capable of taking care of their person and administering their estates. An Order of Effect of Probate and Confirmation of Independent Executrix was signed by the trial court on June 29, 2017.

Gary Mitchell and Sheila Mitchell Johnson filed a Rule to Show Cause to Annul Probated Testament and Rule to Remove Independent Administratrix on July 11, 2017. Gary and Sheila allege that they are legatees of Clarence Walker under a will executed by Clarence on June 15, 2016, which they attached to the rule. Gary and Sheila further allege that the probated will dated May 26, 2017, is invalid because Clarence could not read and the will is not executed in the proper form for a person who cannot read, specifically, "the [w]ill failed to declare that the testament had been read aloud in the presence of the Notary and the witnesses, and further failed to declare that the witnesses followed such reading on copies of the testament, and that the Testator declared or signified that he heard the reading and that the instrument is his testament." They further allege that Clarence "lacked the testamentary capacity to make a [w]ill on May 26, 2017[,] due to his severe dementia and his terminal illness which rendered his mental capacity to such a state as to not know and be aware of his execution of the [w]ill on May 27, 2017." The rule also requests that Joan Roberson be removed as executrix because her

appointment was based on an invalid testament, and she is not a resident or domiciliary of the State of Louisiana.[1]

In addition to the rule, Gary and Sheila filed a Petition for Probate of Statutory Will and for Appointment of Independent Executrix, wherein they ask the trial court to probate the will dated June 15, 2016, and to appoint Sheila Mitchell Johnson as Independent Executrix. In the June 15, 2016 testament, Clarence leaves his estate to Gary, Sheila, Joan and Paul to share equally. This will was executed in Alexandria, Louisiana, one year, almost to the day, prior to Clarence's death.

The trial court signed an Order on July 13, 2017, ordering Joan Robertson to show cause why the May 26, 2017 testament should not be annulled and why Joan should not be removed as Independent Executrix. The matter was heard on October 16 and 17, 2017. The trial court took the matter under advisement and issued Written Reasons on November 30, 2017. Judgment was signed on December 20, 2017, with the trial court denying Gary and Sheila's rule to annul the probated May 26, 2017 will and the removal of the executrix. Gary and Sheila now appeal.

## ASSIGNMENTS OF ERROR

1. The trial judge erred as a matter of law by imposing the burden of proof beyond a reasonable doubt as opposed to proof by clear and convincing evidence.

2. The trial judge erred in finding that the revocation clause contained in the will of May 26, 2017, was a valid, authentic act.

---

[1] Joan Robertson is domiciled in Los Angeles County, California.

# LAW AND DISCUSSION

The law regarding the nullity of a testament based on lack of testamentary capacity is set forth in *In Re Succession of Brackins*, 12-1311, pp. 2-3 (La.App. 3 Cir. 4/3/13), 112 So.3d 963, 965-66, as follows:

> "Capacity to donate mortis causa must exist at the time the testator executes the testament." La.Civ.Code art. 1471. "To have capacity to make a donation ... *mortis causa,* a person must also be capable to comprehend generally the nature and consequences of the disposition that he is making." La.Civ.Code art. 1477. "In an action to annul a notarial testament ... the plaintiff always has the burden of proving the invalidity of the testament." La.Code Civ.P. art. 2932(B). " 'A party is presumed to have testamentary capacity, and the opponent bears the burden of defeating this presumption by putting forth clear and convincing evidence to the contrary.' " *In re Succession of Sandifer*, 05–860, p. 3 (La.App. 3 Cir. 3/1/06), 923 So.2d 862, 865 (quoting *Succession of Fletcher*, 94–1426, p. 4 (La.App. 3 Cir. 4/5/95), 653 So.2d 119, 121, *writ denied,* 95–1105 (La.6/16/95), 655 So.2d 338).

Louisiana Civil Code Article 1577 states:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1)   In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
>
> (2)   In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ___ day of ____, ___."

At the trial of this matter, Gary and Sheila focused on Clarence's inability to read as the reason to nullify the 2017 testament, not his alleged dementia. As such,

there are no medical records introduced into the record, and the trial court did not mention Clarence Walker's terminal illness in its Written Reasons. Therefore, we will direct our opinion to the issue of Clarence's ability or inability to read.

The May 26, 2017 testament was in the proper form for a testator who knows how and is physically able to read. However, it is Gary and Sheila's contention that Clarence Walker could not read. The law regarding the required form for a testator who does not know how to read is found in La.Civ.Code art. 1579 which states:

> When a testator does not know how to read, or is physically impaired to the extent that he cannot read, whether or not he is able to sign his name, the procedure for execution of a notarial testament is as follows:
>
> (1) The written testament must be read aloud in the presence of the testator, the notary, and two competent witnesses. The witnesses, and the notary if he is not the person who reads the testament aloud, must follow the reading on copies of the testament. After the reading, the testator must declare or signify to them that he heard the reading, and that the instrument is his testament. If he knows how, and is able to do so, the testator must sign his name at the end of the testament and on each other separate page of the instrument.
>
> (2) In the presence of the testator and each other, the notary and witnesses must sign the following declaration, or one substantially similar: "This testament has been read aloud in our presence and in the presence of the testator, such reading having been followed on copies of the testament by the witnesses [, and the notary if he is not the person who reads it aloud,] and in our presence the testator declared or signified that he heard the reading, and that the instrument is his testament, and that he signed his name at the end of the testament and on each other separate page; and in the presence of the testator and each other, we have subscribed our names this ____day of ____, _____."
>
> (3) If the testator does not know how to sign his name or is unable to sign because of a physical infirmity, he must so declare or signify and then affix his mark, or cause it to be affixed, where his signature would otherwise be required; and if he is unable to affix his mark he may direct another person to assist him in affixing a mark or to sign his name in his place. The other person may be one of the witnesses or the notary. In this instance, the required declaration must

5

be modified to recite in addition that the testator declared or signified that he did not know how to sign his name or was unable to do so because of a physical infirmity; and that he affixed, or caused to be affixed, his mark or name at the end of the testament and on each other separate page.

(4) A person who may execute a testament authorized by either Article 1577 or 1578 may also execute a testament authorized by this Article.

Numerous witnesses testified at the hearing regarding Clarence's ability to read. In Written Reasons, the trial court summarized Gary and Sheila's testimony as such:

Gary and Sheila testified that while they were not blood relatives to Clarence, they were raised in Clarence and Virginia's home as if they were one of their own. Gary testified that he began living with them at the age of two in 1956 and stayed until he graduated from Peabody High School in 1973. Gary testified that throughout his upbringing, Virginia, who was an educator, and not Clarence, was the main person who would help him with his homework. He testified that Clarence routinely looked at the newspaper and the internal ads and would particularly make note of when "JC Penny [sic] has a sale going on" and note what other sales were occurring. After high school, Gary attended Grambling University with the assistance of Clarence and Virginia. As to the June 15, 2016 Document, Gary testified that he, the other witnesses, the attorney, and Clarence were present throughout the process. He further stated that the attorney read the testament to Clarence, Clarence acknowledged that he could not read or write, Clarence understood everything, and that all the people present signed it. He further stated that Clarence's standard signature was that of "Clarence W."

Likewise, Sheila testified that she began living with Clarence and Virginia at the age of five in 1963, and continued to live with them until she graduated from Peabody High School and left for college at Southern University in 1976. Like Gary, she testified she attended college with the assistance of Clarence and Virginia. Sheila testified that she observed Clarence's behavior throughout the years and that when she asked him to read to her, he would avoid her. She stated that he did not like to have the newspaper read to him, and that he liked to review the advertisements to know which sales were occurring. Sheila testified that throughout her upbringing, Virginia was the one to take care of the house finances and bills, and that prior to Virginia's passing, she never saw Clarence write a check. She testified that Clarence in reviewing his mail, he did note which bills were which by stating "hey, we got the light bill in" or "hey, we got

6

the cable bill in". Further, she stated that after Virginia's passing, she was the one to write the obituary and took on the role of maintaining the house finances. She testified that if she was not available, she was unsure if he would writ a check but that he mainly used cash for purchases. Sheila testified that she attended Southern University for one year, moved back with Clarence and Virginia for a year, and then joined the military. Throughout her service in the military, her daughter resided with Clarence and Virginia. After her retirement in 2002, she moved to and continues to reside in Houston, Texas. She testified that Virginia became seriously ill and passed away in 2014, wherein Sheila began coming home more frequently and that she and Gary would alternate weekends and "share duty". As to the June 15, 2016 Document, Sheila testified that she, Gary, Gary's wife, the notary/attorney, and Clarence were all present throughout the process. Like Gary, she testified that Clarence acknowledged he could not read, that there was a different format for the will, that the will was read aloud to Clarence, and that afterward they all signed.

Barry Nelson testified that Clarence was his uncle on his mother's side and that he lived in the same house as Clarence for ten years. He stated that while Clarence never told him he could not read, Barry did not believe he could because once when he asked him to read a specific part of the newspaper to him, Clarence would not do it.

Andre Gistorb testified that she assisted Clarence with chores and errands during his and Virginia's declining health. Andre had known Clarence from a young age until he passed away. Andre testified that she never saw him read or write anything. Clarence always had cash on him, and Andre never saw him write a check. Rebbie Jones knew Clarence Walker for the two years before he passed away. She assisted him with errands. She testified that she recalled one time when Clarence asked for her help in reading a letter regarding a doctor's appointment. She said that he told her he needed her to read it to him because he could not read.

Sebastian Gauthier lived next door to Clarence and Virginia and was Clarence's godchild. His testimony corroborated much of Gary and Sheila's own testimony. He said that Clarence pushed him to go to school because Clarence did

not have an education. Sebastien testified that Clarence told him that he could not read or write, and Clarence felt it was very important to have an education because he did not. Sebastien Gauthier testified that Clarence often asked him to read things to him and that he observed Virginia reading to Clarence "very frequently."

Constance Crishon is a licensed social worker employed by Heart of Hospice. She has known Clarence since 1979. She testified that Clarence could not read, and she related a story explaining how she knew that he could not read. She said that, when Sebastien Gauthier was in school, he got into some trouble. She remembered Clarence telling Sebastien that he should not be like him and to focus on school because Clarence could not read nor write and he had to try twice as hard because of it. She also testified that she conducted the assessment for Virginia's hospice care. She handed Clarence some documents to review, and Clarence told her, "Girl, you know I can't read nor write." Constance testified that she had to explain the medical documents to Clarence.

David Campo testified that he used to own Lucille's Red Kettle Restaurant, where Clarence was a frequent guest. He testified that Clarence never used a menu, rather he would walk into the restaurant kitchen and select the items that he wanted to eat.

Betty Washington Walker assisted Clarence after his wife died. She testified that she and Clarence would make the shopping list together, but he would take the shopping list to the store by himself and do the shopping. She further recalled that Clarence would look at the advertisements in the newspaper and tell her what was on sale so that she could add it to the grocery list. Chad Bailey is Betty Washington Walker's son. He knew Clarence as a friend of his grandparents. He testified that while out to dinner with Clarence, Clarence never asked for help in

reading the menu. He further testified that he would bring Clarence to hardware stores and that Clarence always had a written list with him. Finally, he remembered that in Clarence's career as a "tile man," Chad recalled that he would take measurements and write them down.

Robert Robertson, Joan's husband, testified regarding the execution of the May 26, 2017 testament. He was a witness to the document. He stated that Clarence was in California in the hospital at the time of the execution and that he appeared to know what he was doing. He testified that no one forced Clarence Walker to sign the will.

The court in the *Succession of Young*, 96-1206, pp. 2-3 (La.App. 3 Cir. 3/5/97), 692 So.2d 1149, 1150-51, tells us:

> The capacity to make a will is tested at the time the will is made. La.Civ.Code art. 1471; *Succession of Caprito v. Mayhew,* 478 So.2d 243 (La.App. 3 Cir.1985), *writ denied,* 481 So.2d 1331 (La.1986). One of the requirements for a statutory will established in La.R.S. 9:2442 is that the testator must be physically able to read at the time the testament is executed. *Naquin v. Hile,* 536 So.2d 676 (La.App. 3 Cir.1988). A testator's ability to read is an element of testamentary capacity. *Succession of Fletcher,* 94–1426 (La.App. 3 Cir. 4/5/95); 653 So.2d 119, *writ denied,* 95–1105 (La.6/16/95); 655 So.2d 338. A party is presumed to have testamentary capacity, and the opponent must put forth clear and convincing evidence of incapacity in order to defeat this presumption. *Succession of Lyons,* 452 So.2d 1161 (La.1984); *Fletcher,* 653 So.2d 119; *Succession of Duboin,* 94–446 (La.App. 3 Cir. 11/2/94); 649 So.2d 617; *Naquin,* 536 So.2d 676; *Succession of Ellis,* 486 So.2d 260 (La.App. 3 Cir.1986); *Caprito,* 478 So.2d 243.

The court goes on to state:

> Generally, the clear and convincing evidence standard requires more than a "preponderance of the evidence" but less than "beyond a reasonable doubt." *Lyons,* 452 So.2d 1161. The existence of the disputed fact must be highly probable, that is much more probable than its non-existence. *Id.* This standard of proof is usually reserved for cases where strong policy considerations mitigate against the use of the preponderance of the evidence standard. *Id.*

9

It is Gary and Sheila's burden to prove that Clarence could not read. In their first assignment of error they argue that the trial court used a higher standard, proof beyond a reasonable doubt, rather than the clear and convincing standard when deciding this case. In its Written Reasons for Judgment, the trial court stated that it:

> [D]enies Gary and Sheila's rule to annul the probated testament and remove independent administratrix finding that they did not satisfy their burden of proving by clear and convincing evidence that Clarence did not have the testamentary capacity to execute the May 26, 2017 Document that was necessary in order to invalidate and nullify it.

The standard used was the clear and convincing standard as evidenced by the language used in the trial court's Written Reasons. This assignment has no merit.

Next, Gary and Sheila argue that the trial judge erred in finding that the revocation clause contained in the will of May 26, 2017, was a valid, authentic act. "An appellate court must accord the factual findings of a trial court great weight in a will contest and cannot disturb such findings in the absence of manifest error." *Matter of Succession of Biscamp*, 16-673, p. 4 (La.App. 3 Cir. 2/1/17), 211 So.2d 472, 476, *writ denied*, 17-408 (La. 4/27/18), 241 So.3d 305 (citing *In re Succession of Hebert*, 12–281 (La.App. 3 Cir. 10/3/12), 101 So.3d 131).

Multiple witnesses who knew Clarence for over thirty years testified during the trial. The majority of these witnesses believed that Clarence could not read or write. More importantly, Rebbie Jones, Sebastien Gauthier and Constance Crishon all testified that Clarence Walker told them that he could not read. No one testified that Clarence told them that he could read. Betty Washington Walker and her son Chad Bailey only testified that they *believed* he could read. Interestingly, neither

10

Joan nor Paul testified during the proceedings about whether their father could read or write.

We also find it notable that Clarence Walker executed the June 15, 2016 will in the form required for persons who cannot read under La.Civ.Code art. 1579. Clarence signed his name on each separate page of the document and at the end of the instrument. The following paragraph is included in the testament:

> THIS TESTAMENT has been read aloud in our presence and in the presence of the Testator, such reading having been followed on copies of the testament by the witnesses and the notary, and in our presence the Testator declared that he heard the reading and that the instrument is his testament, and that he signed his name at the end of the testament and on each other separate page; and in the presence of the Testator and each other we have subscribed our names on this the 15th day of June 2016, Alexandria, Rapides Parish, Louisiana.

Clarence Walker, two witnesses, and a notary public, then signed the document. If Clarence was able to read, this specific form would have been unnecessary. The fact that Clarence executed his will in this form is strongly persuasive evidence that he could not read. This coupled with the testimony of the witnesses, those who knew Clarence best, lead us to conclude that Gary and Sheila proved their case by clear and convincing evidence. We find that the trial court manifestly erred in finding that The Last Will and Testament of Clarence Walker dated May 26, 2017, should not be nullified.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed. The costs for this appeal are assessed to Joan Robertson and Paul Davis.

**REVERSED.**

11