Judge MAX N. TOBIAS, JR.
On 7 February 2000, Lloyd Anthony Maquar. Jr. (hereinafter “the decedent”) departed this life. His probated last will and testament, dated 15 December 1999, left the entirety of his estate to his wife, Denise Ott, the appellee herein, and nothing to his only child, Nia Christine Maquar (“Nia”), the appellant.[1] At the time of the execution of the testament, the decedent was unable to sign his name due to physical infirmity. He signed each page of the will with an “X” or similar mark. The final page of the testament contained an attestation clause that read:
The testator, LLOYD ANTHONY MAQUAR, JR., has declared that he knows how to sign his name, but is unable to sign it because of a physical infirmity and so has affixed his mark, an “X” at the end and on each separate page of this will and declared in our presence that this is his last will and testament and in the presence of the testator and each other we have hereunto subscribed our names this 15 day of December, 1999, New Orleans, Louisiana.
The testament was signed by the decedent in the presence of two witnesses and a notary public. Upon opening the succession, the notary that was present for the signing of the will executed an “AFFIDAVIT FOR PROBATE OF STATUTORY I ¿TESTAMENT.” The affidavit stated that the “testator stated to the affiant that the document was his last will and testament, and that they, as attesting witnesses, along with the Notary, signed at the end of the will with an ‘X’ in each others’ presence, and that they recognized the signature of the testator as affixed by him in several places on the will and also their own signatures, and that of each other.”[2]
On 24 April 2001, the appellee filed a petition for probate of a “statutory testament,” as well as a motion to be confirmed as the executrix of the succession, as had been provided in the decedent’s testament. The appellee was confirmed as executrix of the succession on that day.
On August 28, 2002, Nia filed a petition to annul the probated testament of the decedent on the grounds that it failed to meet the statutory requirements for a valid and enforceable testament found in La. C.C. art. 1578. We note that Nia made no allegation in her pleadings that the decedent was unable to see or read. As such, one could assert that the testamentary capacity of her father, the decedent, was not an issue. Thus the issue becomes whether the testament fulfilled the formalities set forth under article 1578 and is valid as a matter of law. We note that La. C.C. art.1573 provides that “[t]he formalities prescribed for the execution of a testament must be observed or the testament is absolutely null.” [Emphasis added.].
*775 Nia’s petition to annul the probated will also sought to remove her stepmother, the appellee, as the testamentary executrix. Further, she alleged that the testament as a matter of law was invalid. As a consequence, she alleged that j ¡¡the decedent died intestate and that under Louisiana law she is the heir to his estate. As noted above, the petition to annul the testament does not contain any allegation of fraud or undue influence and does not allege that the decedent was illiterate or suffered from any impairment of vision at the time the testament was executed.
In response to Nia’s petition to annul the testament, the notary executed an additional affidavit, which was filed into the record and received in evidence without objection.[3] This second affidavit stated that the notary, who was a licensed attorney and who prepared the testament, knew the testator to be literate; that the notary observed the testator watching television when he arrived at his house to have the testament executed; that he read the testament to the testator and that the testator followed the text with his eyes; that he questioned the testator about the contents of the will and confirmed that it was his last will and testament; that the testator was aware that his wife, Denise Ott, would inherit everything and that his daughter would inherit nothing from him; and that the testator’s only disability on the day he signed the testament was that he was physically unable to sign his name. This affidavit fails, however, to note that the testator declared or signified to the notary and two witnesses that he was “able to see and read” as required by La. C.C. art. 1578(1) or (2). Additionally, the record is devoid of any evidence that the decedent declared to the witnesses that he could see and read or that the witnesses knew in any manner or way that the decedent could see and read.
^Pursuant tó a motion for judgment on the pleadings, a summary proceeding was held on 25 October 2002 to determine the validity of the 15 December 1999 testament. The court rendered a judgment on 7 November 2002, finding that the attestation clause was “substantially similar” to the clause recommended by La. C.C. art. 1578 and that the absence of the clause, “is able to see and read,” would only be potentially fatal to the testament if it had been alleged by Nia that the decedent had not, in fact, been able to see and read. Because no issue of fact on that issue existed, the trial court upheld, the testament and the petition to annul was denied.
Nia appealed that judgment asserting that, as a matter of law, the attestation clause contained in the probated testament rendered the entire instrument unenforceable and invalid, because it did not conform to the requirements found in article 1578. Specifically, she assigns four errors of the trial court. First, she asserts that the trial court erred by holding that the formalities for execution of the testament were followed when the attestation clause of the testament did not state that the decedent was able to see and read. Second, she asserts that the trial court erred by ignoring the newly enacted provision of law requiring the attestation clause of a testament executed by a testator who is able to see and read but is physically incapable of signing to contain the aforementioned language. Third, she argues that the trial court erred by ruling that the attestation clause in question was substantially similar to the clause contained in La. C.C. art. 1578, even though it did not *776 contain the phrase at issue. Finally, she takes issue with the trial court’s reliance on Succession of Fletcher, 94-1426 (La.App. 3 Cir. 4/5/95), 653 So.2d 119, which she asserts is inapplicable to the case at bar.
| .The appellee maintains that the phrase “is able to see and read” is not mandatory and that the attestation clause as drafted is “substantially similar” to the attestation clause found in article 1578. Further, the appellee argues that the purpose of the revisions to succession law was to simplify the probate procedure, not to impose additional formalities and requirements on testaments, and that the formalities that do exist are present to prevent fraud, which is not alleged in this case. As such, she contends that any deviations from the statutory requirements of the decedent’s will are minor and should not invalidate the testament, especially in light of the fact that no allegation is made that the decedent did not execute the will or that it did not reflect his intentions.
La. C.C. art. 1578 provides:
When a testator knows how to sign his name and to read, and is physically able to read but unable to sign his name because of a physical infirmity, the procedure for execution of a notarial will is as follows:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his will, that he is able to see and read but unable to sign because of a physical infirmity, and shall affix his mark where his signature would otherwise be required; and if he is unable to affix his mark he may direct another person to assist him in affixing a mark, or to sign his name in his place. The other person may be one of the witnesses or the notary.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: “In our presence the testator has declared or signified that this is his testament, and that he is able to see and read and knows how to sign his name but is unable to do so because of a physical infirmity; and in our presence he has affixed, or caused to be affixed, his mark or name at the end of the testament and on each other separate page, and in the presence of |fithe testator and each other, we have subscribed our names this _day of_,_”
[Emphasis added.]
La. R.S. 9:2442 and La. R.S. 9:2443, which authorized statutory wills, were repealed effective as of 1 July 1999;[4] La. C.C. arts. 1577 through 1579 were enacted in their place, creating a new “notarial” testament.[5] However, a statutory will executed prior to 1 July 1999 in the form and manner required by La. R.S. 9:2442 or La. R.S. 9:2443 remained valid. The attestation clause found in the decedent’s testament executed on 15 December 1999, some 5.5 months after La. C.C. art. 1578 became law, was obviously taken from the former La. R.S. 9:2442, which governed the execution of statutory testaments prior to 1 July 1999. Repealed La. R.S. 9:2442 C provided that:
C. If a testator is unable to sign his name because of a physical infirmity, the will shall be prepared in *777 writing and shall be dated and executed in the following manner:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last testament, that he is unable to sign because of a physical infirmity, and shall then affix his mark at the end of the will and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: “The testator has declared that he knows how to sign his name but is unable to sign his name because of a physical infirmity and he has affixed a mark at the end and on each other separate page of this will and declared or signified in our presence that this is his last will and testament and in the presence of the testator and each other we have hereunto subscribed our names this_day of_,19 — .”
|7The attestation clause and requirements for a testament executed by a testator who was physically incapable of signing his name but who could see and read found in La. R.S. 9:2442 C are somewhat identical to those contained in La. C.C. art 1578; however, a major difference exists. La. R.S. 9:2442 did not require that the testator declare before the notary and witnesses that he could see and read or that the attestation clause state that the testator was “able to see and read” at the time of the execution of the testament. La. C.C. art. 1578(1) specifically requires that the testator declare, or otherwise signify in some manner, to the notary and two witnesses that he is “able to see and read,” and La. C.C. art. 1578(2) requires that the attestation clause reflect that the testator is “able to see and read.” Under the facts of this case, it is the failure of the testator to include those five words in the attestation to the probated testament, and the failure of the record on appeal to reflect that the testator declared to the notary and two witnesses upon executing the testament that he was able to see and read that arguably makes the probated testament invalid. Such is the gravamen in this case.
As noted above, the Louisiana legislature replaced the former revised statutes (La. R.S. 9:2442 and La. R.S. 9:2443) governing the requirements and formalities of statutory wills with La. C.C. arts. 1577 through 1579 governing the requirements and formalities of notarial wills, and modified the Code of Civil Procedure to simplify the procedures for the probate of statutory and notarial wills. In particular, the new civil code articles authorize only two types of wills: olographic and notarial. The new notarial will has essentially the same requirements as the old statutory will; in fact, the revision comments to La. C.C. art.1577, entitled “Requirements of Form,” state that “[t]his article reproduces the substance of [La.] R.S. 9:2442. It does not change the law.”
|sOne material change was the deletion of the need for the executor to “prove” the testament when probated. Essentially, the revisions enacted by the legislature to the Code of Civil Procedure provide for testaments to be self-proving: one need only file with the court the statutory or notarial testament to be given effect. Thereafter, the trial court merely enters an order that the testament be “filed and executed and this order shall have the effect of probate.” See La. C.C.P. art. 2891 [effective 1 July 1999]. Formerly, one seeking to probate a statutory will was *778 required, among other formalities, to have the testament presented to and examined by the court, paraphed on each page by the court, and verify the testament through an affidavit; the court issued an order probating the will and made a determination as to its apparent validity. Now, all that is required is for one to file the testament with the court to have the will be presumptively valid. Id.
When the legislature created the civil code articles governing notarial wills, it established separate code articles for a number of different “classes” of testators.[6] For a testator who has no impairment or disability that would preclude him from signing the instrument in his own hand, meeting the requirements of La. C.C. art. 1577 is sufficient to ensure the validity of the testament. However, where a testator is unable to sign his name due to some physical impairment and not as a result of his inability to read or see, the provisions of article 1578(1) must be followed, including adherence to the substance of the attestation clause as described in La. C.C. art. 1578(2). One of those clearly set forth provisions is that |9the testator declare before, or signify to, the notary and witnesses to the will that he is able to see and read.[7] Where a testator is unable to sign his name and is illiterate or sight-impaired at the time the testament is executed, La. C.C. art. 1579 imposes additional formalities and requirements, including that the testament be read aloud in the presence of the testator and the witnesses and that the attestation reflect that this was done to insure that the testator knew of the contents of the testament when he executed it, obviously to protect him and his intended heirs from fraud or mistake.
The legislature took the care to create separate codal articles for notarial testaments created by testators with differing disabilities and/or impairments. We presume that the legislature had good reason to do so.[8] It is apparent that the legislature intended that testaments created under those differing circumstances were to be self-proving so that heirs and legatees who might otherwise bear the burden of eliminating doubt as to testamentary capacity might enjoy the simplified and streamlined probate procedures. That is, the legislature wanted to insure that if one adhered to the codal requirements, he or she could be assured, unless a testamentary bequest ran afoul of other laws, that his testamentary wishes would be honored in accordance with the language contained in the testament. The form of each type of notarial will was established such that one would find it nearly impossible to question, absent ambiguity, whether the testator fully understood that which was set forth in the testament and whether it was indeed a reflection of his or her intent to distribute *779 his or her property after death, with any doubts laid to h prest on the face of the testament. The attestation clause set forth in each of La. C.C. arts. 1577 through 1579 is nothing more than a reflection that the testator has declared his intent before and in the presence of the notary and witnesses in accordance with the existence or nonexistence of a disability.
In the present decedent’s case, the legislature amended the requirements of former La. R.S. 9:2442 such that it required that the testator make known that he was able to see and read; the attestation clause reflects such a declaration to erase any doubt as to the testamentary capacity of the testator, insofar as a testament signed with an “X” or similar mark. Strict compliance with La. C.C. art. 1578 erases the doubt, for all intents and purposes, that either the testator did not sign the document himself, that he may be illiterate, or that he was unaware of the contents of his testament. Therefore, the phrase “able to see and read” is not superfluous in the attestation clause found in article 1578 and any attestation clause drafted pursuant to article 1578 should contain the phrase or one “substantially similar” to it in order to comply with the law.[9] For the testament of one who, for whatever reason, is unable to sign his name to be presumptively valid under the current law, the language required by the legislature to be inserted into the attestation clause is intended to erase all doubt as to whether one adhered to the formalities for confecting the will.
However, in the ease sub judice, no allegations of fraud, mistake, undue influence, or that the testator was unable to see or read at the time the testament | ^was executed is made by the appellant. The argument raised by the appellant is that the testament is technically deficient and, as such, null and void.
The appellant further asserts that the trial court erred in relying on the holding in Succession of Fletcher, 94-1426 (La.App. 3 Cir. 4/5/95), 653 So.2d 119. In Fletcher, the testator suffered a stroke prior to executing his testament. His attorney, cognizant of the fact that his client suffered mild paralysis and would have difficulty in signing the instrument, drafted the testament in accordance with La. R.S. 9:2442 C, which governed the execution of statutory testaments where the testator was unable to sign his name due to physical infirmity. The testator attempted to sign his signature on every page, and apparently was successful to some extent, but apparently had some difficulty in signing his name multiple times, resulting in some variation in his signature throughout the document. The testator’s son, who contested the probate of the testament, alleged that his father lost the ability to read as a result of the stroke and that his testament was ergo invalid, for La. R.S. 9:2442 required that a testator have the ability to read. He further argued that the formal requirements of the statute were not met. That.is, although the attestation clause found in subsection C of the statute was used to indicate that the testator was unable to form a signature, the testator signed his name to at least some portions of the testament, thereby not conforming with the attestation clause, which referenced a “mark,” as opposed to a “signature;” further, he asserted that the testament failed to meet *780 the statutory requirements because the body of the testament itself did not reflect that the testator was unable to sign due to physical infirmity and that inclusion of this fact in the attestation clause was insufficient as a matter of law. The court rejected the son’s argument regarding the testator’s ability to read. The court held that the proponent of the will only had the |12burden of establishing that the will was authentic and that it complied with the statutory requirements. Id. at 4, 653 So.2d at 121. The testator’s ability to read was found to be “an element of testamentary capacity, not of authenticity or formality.” Id. Further, a testator is “presumed to have testamentary capacity, and the opponent bears the burden of defeating this presumption by putting forth clear and convincing evidence to the contrary.” Id., citing, Succession of Lyons, 452 So.2d 1161, 1166 (La.1984). The court further held that the statutory requirements for the will were met. La. R.S. 9:2442 did not require that the declaration of the physical impairment be found in the body of the testament, only in the attestation clause; further the distinction between a “mark” and a “signature” was not germane to the question of whether the formalities of the statute were followed. The more important issue was whether the testamentary form used by the testator was proper given his circumstances. The court found that, given the facts of the case, it was. Id. at 7, 653 So.2d at 123.
We agree with the appellant that the facts of Fletcher are not similar enough to the case at bar for the trial court to have relied upon it in determining whether the decedent’s will complied with the requirements of La. C.C. art. 1578. In fact, we find that the decedent’s testament does not meet the formal requirements of article 1578. The failure to include a phrase that the testator “is able to see and read” in the attestation clause and to produce any evidence that the specific declaration requirements to the notary and witnesses were met is a defect in the instrument, fatal to its enforcement and validity.
In Succession of Roussel, 373 So.2d 155 (La.1979), the Supreme Court invalidated a nuncupative testament by private act in which only four of the six witnesses to the will were residents of the parish in which the testament was |1sexecuted. At the time the testament was executed, La. C.C. art. 1581 required that a nuncupative testament by private act be executed “in the presence of five witnesses residing in the place where the will is received.” In reaching its result, the Supreme Court held that:
a material deviation from the manner of execution prescribed by statute will be fatal to the validity of the will. The fact that there is no fraud, or even the suggestion or intimation of it, will not justify the courts in departing from the statutory requirements, even to bring about justice in the particular instance, since any material relaxation of the statutory or codal rule will open up a fruitful field for fraud, substitution, and imposition.
Id. at 157.
In Succession of Malone, 509 So.2d 659 (La.App. 3 Cir.1987), the Third Circuit Court of Appeal invalidated a statutory will prepared for and executed by a testator who was illiterate. The will was purportedly executed in compliance with La. R.S. 9:2443, which governed testaments executed by testators who were illiterate or sight-impaired to the extent that they could not read. At the time, La. R.S. 9:2443 required that a testament for an illiterate testator be read aloud in his presence and that the attestation clause evidence that this requirement was fulfilled. In Malone, the testament did not evidence that it was read aloud to the testator, although the notary to the will and the *781 attorney who was present for its execution testified that the will was read aloud to the testator. Mr. Malone subsequently signed the will with a mark, as he could not form a signature. La. R.S. 9:2443 required that the witnesses follow along with the reading of the will on copies provided to them. This requirement was admittedly not fulfilled; the witnesses to the will did not have copies to read at the time the will was read aloud. The Third Circuit found that the procedures followed by the witnesses to Mr. luMalone’s will were not sufficient to comply with the statute, especially in light of the fact that the body of the will did not state that Mr. Malone could not read and did not in any way explain his mark, which was not a formal signature. Thus, although the flawed attestation clause might have not been fatal to the will, the failure to reflect that the required formalities were followed anywhere in the body of the testament invalidated it as a matter of law.
In Succession of Brown, 458 So.2d 140 (La.App. 1 Cir.1984), the First Circuit Court of Appeal invalidated a will where the notary and witnesses did not recite in the attestation that the testator, notary, and witnesses signed the testament in the presence of each other. Similarly in the case at bar, and as required by article 1578, the notary and witnesses fail to recite in the attestation or otherwise that the testator declared that he could see and read or that the testator could see and read.
The appellee cites Succession of Guezuraga, 512 So.2d 366 (La.1987), in support of her argument that will formalities are not sacrosanct and that adherence to will formalities should be liberally construed. Guezuraga, like Succession of Fletcher, supra, however, is factually distinguishable from the case at bar. In Guezuraga, the testatrix failed to sign the page of her testament containing the conclusion of the attestation clause, but had signed all other pages containing the dispositive portions of her testament. The Supreme Court, noting that the only defect was that the testatrix failed to sign the attestation clause, held that because the will substantially complied with the statute governing the formalities, it was validly executed. In fact, the Court noted that in many common law jurisdictions, from which Louisiana adopted the statutory law, “‘the attestation clause is not | ^regarded as part of the will, but rather as a certificate to the will; and, accordingly, the signature of the testator may either precede or follow such clause and yet be at the end of the will.’ ” Id. at 369, quoting, 2 W. Howe & D. Parker, Page on the Law of Wills § 19.10 & n. 2 (1960 & Supp.1986). Again, the testament was valid because the statutory requirements were met within the body of the will, and the arguably flawed attestation clause did not mandate that it be invalidated.
In the present case, it is not the failure to include the precise words, “is able to see and read,” in the attestation clause that invalidates the testament of the decedent; it is the failure of the testator to comply with the formalities of a notarial will drafted and executed pursuant to article 1578. That article specifically required that the testator declare before, or signify to, the notary and the witnesses the he could see and read. It is this failure to do so that renders the testament null and void as a matter of law. La. C.C. art. 1573.
Based upon the facts presented in this case, we conclude that the 15 December 1999 purported testament of the decedent is absolutely null. Accordingly, we reverse the judgment of the trial court.
REVERSED.

. In the last will and testament at issue, the appellant is incorrectly named "Nia Martinne Maquar.”

. We note the inaccuracy of and inconsistencies in the affidavit. It would appear that the affiant intended to say that only the testator signed the will with an "X", that the witnesses and notary signed their names, and that the affiant recognized the testator's signature, his own signature, and that of the witnesses (being unable to attest what the witnesses, who were unable to be located, heard, recognized and saw).

. It is questionable whether such an affidavit is admissible evidence. See Succession of English, 508 So.2d 631 (La.App. 2 Cir.1987). However, because we decide this case on other grounds, we need not address the appropriateness of the affidavit.

. Acts 1997, No. 1421.

. Id.

.Prior to 1 July 1999, the requirements for a statutory will executed by a testator who was physically incapable of signing his name were contained within the same statute governing the general formal requirements for any statutory testament. A separate statute, La. R.S. 9:2443, governed the validity of a statutory will executed by a testator who was unable to see or read. In the new codal articles, the requirements for a testament executed by a signature-impaired individual with no other disability were carved out of R.S. 9:2442 and encapsulated in its own codal article, article 1578.

. A change in the law was effected: under La. R.S. 9:2442, the physically impaired testator did not have to declare to the notary and witnesses that he could see and read. Under La. C.C. art. 1578(1), the testator was required to declare to the notary and witnesses that he could see and read. Cf, La. C.C. arts. 1577 and 1579.

. The changes to Louisiana law enacted by Acts 1997, No. 1421, were made upon the recommendation of the Louisiana Law Institute.

. In the Official Comments to the revised La. C.C. art. 1578, the legislature notes that "[i]t is intended that the ordinary requirements for a notarial testament apply to the execution of a testament by a person physically unable to sign his name, except insofar as those requirements are modified by this Article.”