992 So.2d 497 (2008)
SUCCESSION OF Duffy Joseph BREAUX, Jr.
No. 2007 CA 2539.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
Writ Denied October 3, 2008.
*498 Daniel A. Cavell, Annette M. Fontana, Thibodaux, LA, for Appellant, Lourie Plaisance Breaux, Individually and in her capacity as Testamentary Executrix.
James E. Toups, Jr., Thomas R. Temple, Jr., Baton Rouge, LA, for Appellees, Kim Breaux, Katie Boudreaux, and Lisa Breaux.
Monique Mary Breaux, Lockport, LA, In Proper Person Appellee.
Laurie Ann Breaux, Lockport, LA, In Proper Person Appellee.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
WELCH, J.
In this appeal plaintiff, Lourie Plaisance Breaux, a proponent of a notarial will, challenges a judgment rendered in favor of Kim Breaux, Katie Breaux Boudreaux, and Lisa Breaux, opponents of the will, declaring the will to be absolutely null. We affirm.

BACKGROUND
On November 20, 2005, Duffy J. Breaux, Jr. executed a document purporting to be his last will and testament. At the time, he was suffering from terminal brain cancer. In the notarial testament, Duffy Breaux left all property owned by him to his wife of 49 years, Lourie Plaisance Breaux. Duffy Breaux died at Terrebonne General Medical Center on December 13, 2005.
On September 1, 2006, Lourie Breaux filed a petition to probate the will and to be named as the Testamentary Executrix. The will was probated on September 5, 2006. On March 14, 2007, three of Duffy and Lourie Breaux's children, Kim Breaux, Katie Breaux Boudreaux, and Lisa Breaux, filed this petition seeking to annul the probated testament against their mother and two of their sisters, Laurie Breaux and Monique Breaux. Therein, the opponents of the will charged that the formalities prescribed for a will were not observed and therefore, the will was absolutely null. They also charged that the will was invalid because their father lacked capacity to donate and because it was the produce of undue influence exerted on Duffy Breaux by his wife and two of his daughters.
The proponents of the will urged that it complied with La. C.C. art. 1578, which sets forth those formalities for executing a will when the testator can read and sign his name, but because of a physical infirmity, is unable to sign his name. This provision requires that the testator, in the presence of the notary and two competent witnesses, declare or signify to them that: *499 (1) the instrument is his testament; (2) that he is able to see and read; and (3) that he is unable to sign because of a physical infirmity. It further requires that the will contain a clause in which the notary and witnesses attest that these declarations were in fact made by the testator, and that the testator affix his mark where his signature would otherwise be required.
A bench trial was held, at which the attorney who prepared the will, the witnesses to the will, the Breaux children, and Lourie Breaux testified. Medical testimony and evidence was also offered on the issue of capacity. The evidence demonstrated that Duffy Breaux was unable to sign his name because of paralysis affecting the right side of his body. The evidence also showed that Duffy Breaux did not declare in the presence of the notary and the witnesses that he could see and read or that he was unable to sign his name because of a physical infirmity.
Following the conclusion of the trial, the trial court ruled that the Breaux's siblings failed to carry their burden of proving by clear and convincing evidence that their father lacked capacity to execute the will or that he had been unduly influenced. The court then concluded that the formalities prescribed by La. C.C. art. 1578 had not been observed. The court noted that although Duffy Breaux did not declare or signify to the notary and the witnesses that he was unable to sign his name because of an infirmity, the evidence was undisputed that a brain tumor caused paralysis of the arm and hand previously used by Duffy Breaux to sign his name. The court also stated that there was evidence that Duffy Breaux could see on the day in question. The court noted, however, that although it was undisputed that Duffy Breaux was literate, his ability to read on the day the will was executed was in dispute. The court stressed that the attorney overseeing the execution of the will did not ask Duffy Breaux if he could read and critically, the attorney was unable to testify that Duffy Breaux could read on that date. The court held that because Duffy Breaux did not declare or signify to the notary and the two witnesses that he was able to see and read, all of the formalities prescribed by La. C.C. art. 1578 were not met, and therefore, the will was absolutely null.
Lourie Breaux appealed, challenging the trial court's invalidation of the will. The opponents of the will, Kim Breaux, Katie Breaux Boudreaux, and Lisa Breaux answered the appeal, challenging the trial court's rulings on mental capacity and undue influence.

DISCUSSION
At issue in this appeal is whether the will meets the statutory requirements for a valid and enforceable testament under La. C.C. art. 1578 where the testator does not declare or signify in the presence of the notary and witnesses that he is able to see and read and knows how to sign his name but is unable to do so because of a physical infirmity. For the reasons that follow, we conclude it does not.
The will executed by Duffy Breaux on November 20, 2005, contains a clause attesting that Duffy Breaux declared and signified that he knows how and is able to read but is unable to sign his name due to a physical infirmity. Thereafter, the will leaves all of Duffy Breaux's property to his wife. Appearing below the bequest is an "X." Thereafter, signatures of two witnesses and the notary, along with Duffy Breaux's mark, appear after an attestation clause containing the language suggested in La. C.C. art. 1578(2). The clause states that in their presence, the testator declared or signified that the instrument is *500 his testament and that he is able to see and read and knows how to sign his name but is unable to do so because of a physical infirmity, and that in their presence, he affixed or caused to be affixed his mark or name at the end of the testament. However, the evidence demonstrated that Duffy Breaux did not declare or signify that he was able to see, read, and knew how to sign his name but was unable to do so because of a physical infirmity.
The record reflects that at the time of the execution of the will, Duffy Breaux was suffering from an aggressive and fatal brain cancer. In January of 2005, he was diagnosed with a brain tumor and had surgery that month to remove the tumor. The doctors indicated that without chemotherapy and radiation, Duffy Breaux had a short time to live. Duffy Breaux went to MD Anderson Cancer Center, where he was treated with chemotherapy and radiation for eight weeks.
In November of 2005, Duffy Breaux made his final visit to MD Anderson. He returned home on November 15 or 16. His daughter, Laurie Breaux, attested that shortly before leaving for his final trip, her father telephoned her and asked her to call an attorney to inquire whether the law changed so that a person could leave everything to a spouse. She stated that after his return, her father called her and asked her to set up an appointment with an attorney to make a new will. In 1993, Duffy Breaux had executed a will leaving his share of certain community movables to his wife and the remainder of his property equally to his five children, subject to his wife's usufruct over the remaining property.
Laurie Breaux contacted John Orgeron, an attorney she went to school with, to prepare a new will for her father. Mr. Orgeron testified that he was asked to prepare a simple will that would leave everything Duffy Breaux had to his wife. He stated that Laurie Breaux told him her father had brain cancer, that his condition was deteriorating, and that her father could not sign his name because part of his body was paralyzed. Laurie Breaux telephoned Mr. Orgeron on a Sunday afternoon and asked him if he could come to her father's house to execute the will. The attorney brought the pre-prepared will to Duffy Breaux's home. He attested that upon entering the bedroom, Duffy Breaux, who was his father's friend and whom he knew since he was a young boy, was lying in bed but was awake and alert, Mr. Orgeron stated that Duffy Breaux recognized him, called him by name and shook his hand. Mr. Orgeron stated that after engaging in "small talk" with Duffy Breaux, he sat next to the bed and explained to Duffy Breaux that the will left everything to his wife, and asked him if that was what he wanted. Mr. Orgeron attested that Duffy Breaux said "yes," and nodded his head, adamantly indicating that was what he wanted. Mr. Orgeron acknowledged that he did not read the will word for word to Duffy Breaux and that none of the witnesses read a copy of the will before it was executed.
At trial, Mr. Orgeron stated that Duffy Breaux held the will in his hand and glanced at it, although he did not read the will word for word. The attorney acknowledged that he did not specifically ask Duffy Breaux if he could read and testified that he could not say that Duffy Breaux could in fact read on the day in question. He further acknowledged that Duffy Breaux did not state to him or the witnesses that he could see or read or that he was unable to sign his name because of a physical infirmity. He opined that Duffy Breaux had capacity to make the will and stressed that if he had any doubts as to *501 Duffy Breaux's competency, he would not have executed the will.
The will was witnessed by Ernest Matherne, Laurie Breaux's boyfriend, and Rita Jones, a home health care nurse who was caring for Duffy Breaux that afternoon. Ernest Matherne testified that Duffy Breaux was sitting up in bed when he came into the room, and stated that while the will was executed, Duffy Breaux was awake and alert. Rita Jones added that she witnessed Duffy Breaux make his marks on the will and that Duffy Breaux was able to carry on weak, limited conversation with her that afternoon.
The testimony regarding Duffy Breaux's condition near the time of the execution of the will was conflicting. Lisa Breaux testified that upon his return from MD Anderson in the middle of November, her father was so weak he could not carry on a conversation and was unable to read because he was always sleeping, could not keep his eyes open long enough to read, and could not hold anything in his hands. She was at her parents' home on the day the will was executed. Although she did not witness the signing of the will, she stated that her father was lifeless, slept the entire time she was there, and was unable to converse with anyone. Katie Boudreaux added that she too was at her parents' home on the day the will was executed, and that her father was non-responsive and incapable of reading or holding anything in his hands. She testified that her father did not even recognize her after his final visit to MD Anderson.
The proponents of the will offered a different account of Duffy Breaux's condition at that time and near the time he executed the will. Monique Breaux, a certified nursing assistant, testified that she saw her father the evening the will was executed and had a conversation with him. She testified that during the week preceding the execution of the will, she did speech therapy with her father consisting of showing him flash cards with pictures and obtaining his response. She stated that her father always understood her and that she believed from her work with her father, that he could see and read on the day he executed the will. Laurie Breaux testified that she and her father played cards shortly after Mr. Orgeron left their home with the executed will. Additionally, they offered the testimony of four individuals who saw or treated Duffy Breaux around the time of the execution of the will. Dr. Michael Penguy, who treated Duffy Breaux in his office the day after the will was executed, attested that he carried on a lengthy conversation with Duffy Breaux. Therapist Nolan Bonvillion, who performed therapy on Duffy Breaux three times from October 28 through October 31, and who stated that he had no problem communicating with Duffy Breaux and that Duffy Breaux was able to follow instructions given to him. Cathy Melancon, testified that she visited Duffy Breaux the day he executed the will, that he recognized her and spoke to her. Additionally, Janie Chiasson, a registered nurse, who made six or seven home health care visits to Duffy Breaux in October and November of 2005, testified that Duffy Breaux recognized her, remembered her name, and carried on conversations with her.
On November 22, 2005, two days after the will was executed, Duffy Breaux was taken to Terrebonne General Medical Center. Dr. Patrick Walker, who observed Duffy Breaux that day, attested that he was fragile, very lethargic, was easily falling asleep and was unable to give him a clear health history. Dr. Walker felt the hospital could only offer supportive treatment and admitted Duffy Breaux to the hospital, where he died three weeks later.

*502 LEGAL PRECEPTS AND ANALYSIS
A notarial testament is one that is executed in accordance with the formalities of Articles 1577 through 1580.1. La. C.C. art. 1576. There are five types of notarial testaments, each designed for a specific testator: a testator who can sign his name and read (Article 1577); a testator who is literate and sighted but physically unable to sign (Article 1578); a testator who is unable to read (Article 1579); a testator who is able to read Braille (Article 1580); and a testator who is deaf and blind (Article 1580.1).
Appellant contends that the will meets or substantially meets the requirements of La. C.C. art. 1578. That provision states:
When a testator knows how to sign his name and to read, and is physically able to read but unable to sign his name because of a physical infirmity, the procedure for execution of a notarial testament is as follows:
(1) In the presence of the notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament, that he is able to see and read but unable to sign because of a physical infirmity, and shall affix his mark where his signature would otherwise be required; and if he is unable to affix his mark he may direct another person to assist him in affixing his mark, or to sign his name in his place. The other person may be one of the witnesses or the notary.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this is his testament, and that he is able to see and read and knows how to sign his name but is unable to do so because of a physical infirmity; and in our presence he has affixed, or caused to be affixed, his mark or name at the end of the testament and on each other separate page, and in the presence of the testator and each other, we have subscribed our names this ____ day of ____, ____."
Appellant contends that the trial court erred in finding that the formalities of La. C.C. art. 1578 were not observed, in not finding that the contents of the attestation clause in the will were sufficient to satisfy the formalities of La. C.C. art. 1578, and in not finding that there was substantial compliance with that provision. She submits that there is evidence that there was compliance with La. C.C. art. 1578, considering the language of the attestation clause, which is essentially verbatim to the language suggested in that article, along with the following facts: Duffy Breaux orally and expressly signified before the notary and two witnesses that the instrument was his last will and testament and that the testament contained the provisions he desired; Duffy Breaux made his mark after the attestation that declared he was able to read and see; Duffy Breaux had a physical infirmity preventing him from signing his name; and, the will was executed in the presence of the notary and two witnesses.
The opponents of the will urge that the declaration requirements of La. C.C. art. 1578 are mandatory and because the testator did not declare or signify in the presence of the notary and two witnesses that he was able to see and read but unable to sign because of a physical infirmity, under the clear language of La. C.C. art. 1573, the will is absolutely null. Louisiana Civil Code article 1573 declares that "[t]he formalities prescribed for the execution of a testament must be observed or the testament is absolutely null."
In support of their position, the opponents of the will rely on the case of In re *503 Succession of Maquar, XXXX-XXXX (La.App. 4th Cir.6/4/03), 849 So.2d 773, writ denied, XXXX-XXXX (La.11/21/03), 860 So.2d 544, which, under similar circumstances, held that the failure of the testator to declare or signify to the notary and witnesses that he could see and read rendered a will drafted pursuant to La. C.C. art. 1578 absolutely null. In Maquar, the testator was unable to sign his name due to a physical infirmity. The will contained an attestation clause which did not state that the testator declared or signified that he could see and read. The will was probated, and in connection with a challenge seeking to annul the probated testament, the notary who prepared the will filed an affidavit stating, among other things, that he: knew the testator to be literate; observed the testator watching television when he arrived at his house to have the testament executed; and read the will to the testator, who followed the text with his eyes. However, the record was devoid of any evidence that the testator declared to the notary and two witnesses upon executing the testament that he was able to see and read, and the attestation clause in the will did not reflect this declaration. Maquar, XXXX-XXXX at p. 3, 849 So.2d at 775.
In Maquar, the court held that because La. C.C. art. 1578 specifically required that the testator declare before, or signify to, the notary and witnesses that he could see and read, the testator's failure to comply with the formalities of a notarial will drafted and executed pursuant to that provision rendered the testament null and void as a matter of law under La. C.C. art. 1573. Maquar, XXXX-XXXX at p. 15, 849 So.2d at 781. In reaching this conclusion, the court looked to the history of La. C.C. art. 1578. In 1997, by virtue of La. Act No. 1421, effective July 1, 1999, the legislature repealed La. R.S. 9:2442 and La. R.S. 9:2443, which governed the requirements and formalities of statutory wills, and replaced those provisions with Articles 1577 through 1579 of the Civil Code governing the requirements and formalities of notarial wills. At the same time, the legislature modified the Code of Civil Procedure to simplify and streamline the procedures for the probate of notarial will, making the notarial will "self-proving," See La. C.C.P. art. 2891; see also Samuel, Cynthia, The 1997 Successions and Donations Revision  A Critique in Honor of A.N. Yiannopoulos, 73 Tul.L.Rev. 1041, 1063. The court stated it was obvious that the legislature took great care to create separate codal articles for notarial testaments created by testators with differing disabilities and/or impairments, and that it must be presumed that the legislature had good reason to do so. Maquar, XXXX-XXXX at p. 9, 849 So.2d at 778.
The court also pointed out that the requirement that the testator who cannot sign his name because of an infirmity declare that he could see and read contained in La. C.C. art. 1578 represented a change in the law, as its predecessor, La. R.S. 9:2442, required only that the testator signify to the notary and witnesses that the instrument was his will and that he was not able to sign his name because of a physical infirmity. This amendment was intended, the court stated, to erase any doubt as to the testamentary capacity of a testator who is physically unable to sign the testament. The court stated that strict compliance with La. C.C. art. 1578's declaration requirements was intended to erase all doubt that either the testator did not sign the document himself, that he may be illiterate, or that he was unaware of the contents of his testament. Maquar, XXXX-XXXX at p. 10, 849 So.2d at 779.
Appellant attempts to distinguish the instant case from Maquar on the basis that the attestation clause in that case did not contain the language required by La. C.C. *504 art. 1578(2), while in this case, the attestation clause states that Duffy Breaux declared to the notary and witnesses that he could see and read. However, the distinction is one without a difference, because clearly the evidence in this case contradicted the language of the attestation clause. It is undisputed that Duffy Breaux did not declare or signify to the notary and the witnesses that he could see and read and did not declare that he was unable to sign his name due to a physical infirmity.
We agree with the reasoning of Maquar, and in line with that decision, we hold that the testator's failure to follow La. C.C. art. 1578's specific declaration requirements renders the testament an absolute nullity. Although invalidation of the will under the circumstances of this case may seem to be harsh, it is a result that is legislatively mandated. Louisiana Civil Code article 1573 declares that the formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. Louisiana Civil Code article 1578 contains specific declaration requirements that must be made by the testator in the presence of the notary and witnesses. When a law is clear and unambiguous and its application does not lead to absurd results, the law shall be applied as written. La. C.C. art. 9; Pumphrey v. City of New Orleans, 2005-979, p. 10 (La.4/4/06), 925 So.2d 1202, 1209. In this case, it is undisputed that Duffy Breaux did not make the declarations required by La. C.C. art. 1578, and that failure rendered the testament absolutely null pursuant to the clear language of La. C.C. art. 1573. To hold otherwise would render the statutory formalities contained in La. C.C. art. 1578 meaningless.
Accordingly, we conclude that the trial court correctly held that the will did not meet the statutory requirements for a valid and enforceable testament. Because of this ruling, it is unnecessary to address the other challenges to the validity of the testament that are raised in this appeal.

CONCLUSION
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant, Lourie Plaisance Breaux.
AFFIRMED.
PETTIGREW, J., concurs.