DAVID S. GORBATY, Judge.
| Appellants are the adult children of Joseph W. Merrick, Sr. They appeal a judgment denying their motion to annul their father’s will, by which he bequeathed fifty percent of his estate to a long-time friend, Johnnie Fisher, appellee. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY:
Joseph W. Merrick, Sr., died on April 8, 2001, at the age of 92. Prior to his death, he executed a last will and testament on December 26, 2000. In that will, he left fifty percent of his estate to his friend, Johnnie Fisher, and the remainder to his wife, Alice. He named his son, Noel Mer *196 rick, as executor, and Wilson C. Boveland as attorney for his executor and estate.
Noel Merrick filed a Petition for Probate of Statutory Will on April 20, 2001. He and his brother, Joseph Merrick, Jr., verified the petition and signed the Affidavit of Death, Domicile and Heirship. The will was probated the same day.
On March 19, 2001, Johnnie Fisher filed a rule in the succession proceeding seeking to have Noel Merrick appear and show cause why he should not be |2removed as executor for the late Mr. Merrick’s estate. Mr. Fisher complained that Noel Merrick, who lived out of state, had failed to appoint a resident agent for service of process in violation of La.Code Civ. Proc. art. 3182. A hearing was set for May 17, and service was made upon Noel Merrick pursuant to the Louisiana Long Arm Statute. Noel Merrick, along with his sister, Eleanor, and his brother, Joseph, Jr., opposed the removal of Noel as executor, and named newly enrolled counsel as local agent for service of process.
Apparently, the next pleading filed into the subject record was a petition to annul the probated will and to have monies removed from a bank account returned. The record filed with this Court does not contain said petition, but on June 11, 2002, Mr. Fisher requested an extension of time to respond to said pleading. He answered the petition on August 11. The deceased’s children then filed a motion for Johnnie Fisher to return funds allegedly removed from their father’s bank account, and to provide an accounting. A hearing was set, but the rules and motions were deferred pending completion of Mr. Fisher’s deposition by the appellants. The matter was subsequently tried on October 12, 2006 and March 14, 2007, and was taken under advisement. Judgment was rendered August 9, 2007, and appellants filed a timely appeal to the portion of the judgment denying their motion to annul the will.
LAW AND ANALYSIS:
In their first, second and fourth assignments of error, appellants argue that the trial court erred in finding that the subject will was in proper form in light of lathe fact that they presented medical evidence and expert testimony to prove that their father was legally blind at the time he executed the will. Appellants argue that the trial court erred in disregarding the expert testimony and medical records submitted into evidence.
Specifically, appellants argue that despite the expert medical testimony provided by Dr. Marguerite McDonald, the medical records from Touro Hospital, and their own testimony, the trial court did not find that their father was blind, thereby requiring the notary to follow the notarial testament form provided by La. Civ.Code art. 1579. Article 1579 sets forth requirements as to the form of the will when the testator does not know how to read or is physically impaired to the extent that he cannot read.
In written reasons for judgment, the trial judge explained that the attorney who prepared the will testified that to his knowledge the deceased was not blind. The attorney also noted that neither Joseph Merrick, Jr., nor Noel Merrick questioned the authenticity of the will when they signed the documents necessary to probate the will, almost one year prior to seeking the annulment of the will.
As to the testimony of Dr. McDonald, the judge noted that she had not examined Mr. Merrick since 1998. Further, Mr. Merrick’s medical records indicated that when he was examined by one of Dr. McDonald’s colleagues in 2000, he could count fingers from a distance of three feet. Based on Mr. Merrick’s condition the last time she examined him, Dr. McDonald opined that by early 2000 he would have *197 been blind in his left eye, with limited peripheral sight in his right |4eye. She further opined that Mr. Merrick would not have been able to read even with a magnifying glass. On cross-examination, however, Dr. McDonald admitted that while he was her patient, Mr. Merrick executed all documents necessary for his treatment, including authorizations and payments.
As to the lay testimony, Alice Faye Dab-ney, the decedent’s goddaughter, testified that Mr. Merrick sometimes wore a hearing aid and eye glasses. However, she testified that Mr. Merrick frequently called her on the telephone without assistance in dialing. Two of the decedent’s children, Noel and Eleanor, testified that their father was very hard of hearing and was virtually blind. They also admitted that they lived out of state and visited their father infrequently. Noel also testified that his father called him on the telephone.
Appellee Johnnie Fisher testified that he had known the elder Mr. Merrick for approximately fifty years, and had cared for him for years on a daily basis, including driving, running errands and paying bills. It was his opinion that Mr. Merrick could see and read. Mildred Lewis, a lady who cooked for the deceased the last two years of his life and saw him daily testified that Mr. Merrick could see and read. In fact, he would read the paper’s headlines and discuss the issues with her. He often complimented her on her clothes, and would comment if she was late after looking at the clock. Mr. Merrick personally wrote her paychecks.
In Green v. K-Mart Corp., 03-2495, p. 5 (La.5/25/04), 874 So.2d 838, 843, the Louisiana Supreme Court stated, “[c]redibility determinations are for the trier-of-fact, even as to the evaluation of expert testimony.” The Court further noted |fithat the trier-of-fact may accept or reject in whole or in part, an expert’s testimony. Id. It then stated: “The trier-of-fact may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole.” Id.
Although Dr. McDonald was offered as both an expert and as the deceased’s treating physician, she testified that she had not treated the deceased for several years prior to his death. Thus, her “opinion” that his eyesight had worsened to such a degree that he could not have read the will prior to signing, was speculative. The testimony of persons in daily contact with Mr. Merrick clearly refuted Dr. McDonald’s testimony as to Mr. Merrick’s ability to see. Further, the medical records submitted do not indicate how the nurses and/or doctors who completed the medical charts arrived at the conclusion that Mr. Merrick was either blind or had very poor vision. The lay testimony of Mr. Fisher, Ms. Dab-ney and Ms. Lewis indicated that Mr. Merrick was sighted to the degree that he could read the newspaper headlines, dial a telephone and write checks.
In its reasons for judgment, the trial court noted that testamentary capacity is presumed, and the party opposing the testament bears the burden of proving by clear and convincing evidence, that the testator lacked such capacity. Succession of Lyons, 452 So.2d 1161, 1166 (La.1984); Succession of Maquar, 03-0041, p. 12 (La.App. 4 Cir. 6/4/03), 849 So.2d 773, 780. The trial court did not find that Mr. Merrick’s children had carried the heightened burden of proof necessary to annul their father’s will. After reviewing the record, we cannot say that the trial court |fiwas manifestly erroneous in its factual findings, and thus, affirm the trial court’s ruling that Mr. Merrick had sufficient ability to read to maintain his testamentary capaci *198 ty, and that the form of the will was proper.
In their third assignment of error, the appellants urge that the trial court erred in finding that the signature on the will in question was that of the testator, despite evidence to the contrary.
Appellants called a hand writing expert to testify as to the authenticity of their father’s signature on the will. In the expert’s opinion, Mr. Merrick did not sign the will. Appellants argue that the expert’s opinion should have been accepted by the trial court, especially in light of the fact that Mr. Fisher did not offer any expert testimony to refute their expert’s opinion.
Mr. Fisher points out that the expert hired by appellants was not aware that Mr. Merrick signed four sets of the will, each set consisting of three pages. The expert admitted on cross-examination that it would have been beneficial for her to have examined all of the documents, and to know the order in which he signed, noting that a person of Mr. Merrick’s age would have tired, thus affecting his signature.
As stated above, the trier-of-fact may accept or reject an expert’s opinion in whole or in part. Green, supra. Further, it is not within the realm of this Court’s review to make credibility calls or to reevaluate the testimony of a witness. This is clearly one of those cases in which the trial court was in a unique position to observe the witness’ testimony and demeanor, while we as a reviewing court have access only to a cold record. When, as here, there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable |7factual basis for its finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). The trial court stated in reasons for judgment that the attorney who prepared the will testified that Mr. Merrick signed it. Thus, it is clear that the trial court accepted the testimony of the attorney, and rejected the testimony of appellants’ expert, and we cannot say that the trial court erred in making such a determination.
Finally, appellants argue that because Mr. Fisher listed an expert witness and the attorney’s secretary, a witness to the will, as witnesses at trial, but failed to call them, the trial court should have applied the “adverse presumption” rule. However, this assignment of error is not briefed and we will not address it. Uniform Rules-Courts of Appeal, 2-12.4.
After a thorough review of the testimony and exhibits, we cannot say that the trial court erred in finding that the last will and testament of Joseph W. Merrick, Sr., was valid in form and content, and in denying appellants’ motion to annul the will. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.